**Daniel J. WALSH d/b/a Liberation Graphics, Plaintiff,**

v.

**Nicholas F. BRADY, Secretary of the Treasury, et al., Defendants.**

**Civ. A. No. 89–1112.**

United States District Court,
District of Columbia.

Nov. 1, 1989.

Kate Martin, Washington, D.C., and Cornelia Pillard, New York City, for plaintiff.

Sandra M. Schraibman and Anne L. Weismann, Civ. Div., Dept. of Justice, Washington, D.C., for defendants.

MEMORANDUM

GESELL, District Judge.

Plaintiff, Daniel J. Walsh ("Walsh"), an established, experienced importer of political posters from various countries around the world, seeks a license to enter Cuba solely for the purpose of arranging for the importation of Cuban posters to the United States. He challenges the decision of the Director of the Treasury's Office of Foreign Assets Control (the "Director") denying the license. Issues of statutory interpretation and First Amendment rights have been extensively briefed and argued in support of dispositive cross-motions for summary judgment. There are no material facts in dispute.

This controversy requires the Court to resolve an apparent clash between Regulation 560 of the Cuban Assets Control Regulations issued by the Secretary of the Treasury, 47 Fed.Reg. 17,030 (April 30, 1982), 31 C.F.R. Part 515, under authority of the Trading With The Enemy Act of 1917, 50 U.S.C.App. § 1 et seq., and a subsequent 1988 amendment of that Act affecting posters and other "informational materials" accomplished by Section 2502 of the Omnibus Trade and Competitiveness Act of 1988, Pub.L. No. 100–418, 102 Stat. 1107.

Regulation 560, which is implemented by the Director, was designed to "reduce Cuba's hard currency earnings from travel by U.S. persons to and within Cuba" pursuant to announced national policy. 47 Fed. Reg. 17,030 (April 30, 1982). In contrast, the subsequent 1988 amendment limited the Secretary's authority in this regard as follows:.

(b)(4) The authority granted to the President in this subsection does not include the authority to regulate or prohibit, directly or indirectly, the importation from any country, or the exportation to any country, whether commercial or otherwise, of publications, films, posters, phonograph records, photographs, microfilms, microfiche, tapes, or other informational materials, which are not otherwise controlled for export under section 5 of the Export Administration Act of 1979 or with respect to which no acts are

prohibited by chapter 37 of title 18, United States Code.

Walsh contends that a proper interpretation of the amendment entirely nullifies the earlier regulation as applied to his proposed trip to Cuba because Congress intended to deny the President any further authority even *indirectly* to regulate importation from *any* country of *posters* or other "informational materials." This position is bolstered by Walsh's uncontroverted declaration stating that it is necessary for him to proceed to Cuba to arrange for any importation of Cuban posters. He states that Cuban poster publishers require his presence in Cuba before they will make the necessary technical, financial and transportation arrangements. Walsh wishes to spend U.S. currency in Cuba for local travel costs, hotel bills, food bills, business entertainment, etc. He further notes his personal need to be in Cuba to choose from thousands of posters, to meet the artists and engage in "give and take" negotiations on the spot as well as to arrange other aspects of a commercial deal. These representations are consistent with his experience in other countries from which he has imported political posters.

The Secretary took and continues to take a much narrower view of the meaning and effect of the amendment. This is reflected in the slight change made in the Cuban Assets Control Regulations to accommodate the amendment, which now simply provides as follows:

> All financial and other transactions directly incident to the physical importation or exportation of informational materials are authorized.

54 Fed.Reg. 5234 (Feb. 2, 1989).

Thus, although the Secretary recognizes that "informational materials," such as posters, are exempted from certain previous Cuban Assets Control prohibitions, he is unwilling to authorize payment of U.S. currency to Cubans for travel to or related expenditures within Cuba looking toward settling arrangements for importation of such materials. Although the amendment lacks any meaningful legislative history, the Secretary contends that it did not restrict his authority on behalf of the President to prohibit travel-related expenditures of U.S. currency to or within Cuba. The Secretary rests his position on the need to view the amendment narrowly because of its impact on established foreign policy developed by the President and urges that the precise language of the amendment, which does not mention travel or travel-related expenses, is decisive because Congress has long been aware of travel expenditure limitations incident to the Cuban currency embargo.

The restrictions the Secretary has placed on Walsh concern use of hard U.S. currency because of the economic benefit to that country which the nation's embargo contemplates should be withheld. Walsh is free to travel to Cuba using U.S. currency payable to a non-Cuban carrier. He is simply prohibited from using or committing U.S. funds while in Cuba for any purpose. Since there is no indication that Cuban poster suppliers will subsidize him in Cuba, the rigidity of the Secretary's position would appear to create serious obstacles to Walsh's desire to import Cuban posters. However, the question remains whether or not the regulation, as thus applied, indirectly regulates importation of posters.

Clearly it affects only Cuban posters and Walsh can seek posters from other countries, even Nicaragua, where Cuban influence may be manifested. However, Walsh not only insists that the Secretary is indirectly regulating import trade in political posters contrary to the wording of the amendment, but he urges an interpretation of the amendment that would permit both limited on-site scouting of the Cuban market expenses but also allow unlimited currency commitments for immediate and future wholesaling of political poster trade from Cuba to the United States. To further this position, existing regulations found at 31 C.F.R. § 515.560(a)(1) (1983) which permit certain travel-related expenses in Cuba by other Americans not unlike those sought at a minimum by Walsh are noted. Counsel urges that it is arbitrary to deny Walsh's request for a license in view of these dispensations.

*Regan v. Wald,* 468 U.S. 222, 104 S.Ct. 3026, 82 L.Ed.2d 171 (1984), however, strongly supports the presidential authority to restrict travel to Cuba in order to curtail the flow of hard currency to Cuba in furtherance of this nation's foreign affairs. Congress will be presumed to have concurred in executive branch foreign affairs policy unless Congress clearly indicates the contrary. *Id.* at 236, 104 S.Ct. at 3034–35. There is a wide gap between Congress' desire to encourage importation of political posters from around the world generally and other "informational materials" in order to expose the ideology they convey, on the one hand, and totally eliminating all special Cuban currency restrictions developed by the President for larger, more immediate policy reasons, on the other.

This case is not an action of the Director or the Secretary intending to deny any First Amendment rights inherent in the amendment. The amendment was directed to a perceived need to liberalize regulation of imports of posters and other "informational materials" generally, but there is no indication that Congress intended to affect existing hard currency controls developed for other reasons of national policy governing our relations with a particular country. Thus the Secretary has not interfered with congressional purpose in this situation.

Because Congress gave no special reference to the currency conditions affecting Cuba and chose to speak in broad, all-inclusive terms, Walsh's contention, without benefit of any legislative history, that Congress intended to impose no limit on the amount of currency that could be spent in Cuba to assure that its political posters are imported must be rejected. This reaches too far. Such an intrusion on presidential authority in the field of foreign policy cannot be inferred, particularly where the policy was fully known and well established when the amendment was enacted.

Walsh has established that travel to a foreign country is a normal and perhaps a necessary incident on occasion, as in the case of Cuba, to arrange for imports of political posters into the United States. Thus Congress must be viewed as favoring any liberalization of currency restrictions consistent with Presidential policy. This might permit the Secretary to relax controls to enable an importer interested in Cuban posters to spend a minimal amount within Cuba to determine the nature of the information material available. Indeed, it would appear to be consistent with existing regulations relating to Cuban expenditures in other connections possibly to permit such limited access by potential importers of "informational materials" to suppliers in Cuba under a license which limits funds expended for scouting of the available market while maintaining the embargo against any significant currency benefit to the Cuban economy in the form of payment, prepayment, shipping charges, technical support, etc. during a brief visit.

However, it is obviously not this Court's function to usurp the authority of the Secretary in this area. Highly technical aspects of currency control would have to be considered. There may be persons other than Walsh interested in importing "informational materials" from Cuba and the Administrative Procedures Act provides appropriate procedures for initiating, crafting and implementing any further regulatory approach.

Summary judgment is granted for the defendants and denied for plaintiff Walsh.